### UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF ILLINOIS

—————————————————————— )
IN RE YASMIN AND YAZ (DROSPIRENONE) )   3:09-md-02100-DRH-PMF
MARKETING, SALES PRACTICES AND    )
PRODUCTS LIABILITY LITIGATION      )       MDL No. 2100
—————————————————————— )

**This Document Relates to:**

——————————————————————

**CATHY M. WALTON,**

      **Plaintiff,**                    **Case No. 3:09-cv-10217-DRH-PMF**

**v.**

**BAYER CORPORATION, BAYER
HEALTHCARE LLC, BAYER
PHARMACEUTICALS
CORPORATION, BAYER
HEALTHCARE PHARMACEUTICALS
INC., BERLEX LABORATORIES, INC.,
BERLEX, INC., JOHN DOE
MANUFACTURERS A-Z,
NIEMAN FOODS, INC., JOHN DOE
DISTRIBUTORS A-Z,**

      **Defendants**

——————————————————————————————————————

### ORDER

**HERNDON, Chief Judge:**

### INTRODUCTION

      This matter is before the Court on the motion for remand

brought by Plaintiff, Cathy M. Walton (09-cv-10217 Doc. 11). Plaintiff

asserts claims against Bayer Corporation, Bayer Healthcare LLC, Bayer

HealthCare Pharmaceuticals, Inc. (collectively, "the Bayer Defendants")[1],
and Niemann Foods, Inc.[2]  Plaintiff's claims arise from personal injuries
she allegedly suffered as a result of using Yasmin, an oral contraceptive
prescription medication.  Plaintiff asserts claims for strict products
liability, negligence, failure to warn, breach of implied warranty, and
fraudulent misrepresentation against all of the Defendants (09-cv-10217
Doc. 2-1 pp. 2-4).  Plaintiff alleges that the Bayer Defendants are liable for
her alleged injuries because they were "engaged in the business of
developing, designing, licensing, manufacturing, distributing, selling,
marketing, and/or introducing [Yasmin and Yaz] into interstate commerce."
Plaintiff asserts that Niemann Foods is subject to liability for her alleged
injuries because it was "in the business of selling, distributing, labeling,

---

[1] Plaintiff has also named Bayer Pharmaceuticals Corporation, Berlex Laboratories, Inc. and Berlex Inc as defendants (09-cv-10217 Doc. 2-1 pp. 3-4).  However, the Berlex entities now operate as Bayer HealthCare Pharmaceuticals Inc., which is also named as a defendant (09-cv-10217 Doc. 2 pp. 1 n1, 5).  In addition, Bayer Pharmaceuticals Corporation was merged into Bayer HealthCare Pharmaceuticals Inc. as of January 1, 2008 (09-cv-10217 Doc. 2 p. 1 n1).  To determine the effect of a merger, the Court looks to the law of the state of incorporation.  *See* Rule 17(b) F. R. Civ. P.  Bayer Pharmaceuticals Corporation was a Delaware corporation.  (Doc 2 pp. 5-6).  Pursuant to the laws of Delaware, in the event of a merger, the separate existence of the constituent corporation (in this case Bayer Pharmaceuticals Corporation) ceases at the time of the merger and the constituent corporation's identity is absorbed into that of a new corporation or into the corporation with which it was merged (in this case Bayer HealthCare Pharmaceuticals Inc.).  *See* 8 Del. Code Ann. Tit. 8, § 259.  In addition, at the time of merger, the new or surviving corporation assumes the debts, liabilities, and duties of the constituent corporation.  *See* 8 Del. Code Ann. Tit. 8, § 259.  Accordingly, as of January 1, 2008, Bayer Pharmaceuticals Corporation ceased to exist and Bayer HealthCare Pharmaceuticals Inc. became liable for all the debts, liabilities and duties of Bayer Pharmaceutical Corporation.  For these reasons, the citizenship Bayer Pharmaceuticals Corporation is not relevant.  *See Hoefferle Truck Sales, Inc., v. Divco-Wayne Corp.,* 523 F.2d 543, 548-549 (7th Cir. 1975).
[2] Niemann Foods Inc. has been incorrectly identified in the Complaint as "Nieman Foods, Inc." (09-cv-10217 Doc. 24 pp. 1-2).  Plaintiff also names as defendants John Doe manufacturers and distributors (09-cv-10217 Doc. 2-1).  The presence of these unknown defendants is irrelevant to the Court's diversity analysis.  *See* 28 U.S.C. § 1441(a).  *See also Yount v. Shashek,* 472 F.Supp.2d 1055, 1058 n.1 (S.D. Ill., 2006) (in removal action the citizenship of defendants sued under fictitious names is disregarded and, thus, fact that complaint named "Unknown Defendants" was not relevant to the Court's diversity analysis).

marketing, and/or placing...pharmaceutical drugs including Yasmin and Yaz into interstate commerce" (09-cv-10217 Doc. 2-1 p. 4).

This case was originally filed in the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, and has been removed from state court to this Court by the Bayer Defendants on the basis of federal diversity jurisdiction. Plaintiff in turn has moved for remand of this case to state court (09-cv-10217 Doc. 11). Plaintiff challenges the removal on four bases: (1) defective removal for failure to attach copy of the summonses to the notice of removal; (2) lack of complete diversity between the parties; (3) insufficient evidence of damages in excess of $75,000; and (4) removal was improper because Niemann Foods is a citizen of Illinois, the State where the action was originally brought.

The Bayer Defendants have responded in opposition, contending that Niemann Foods was fraudulently joined in this suit in an attempt to destroy diversity jurisdiction, as both the Plaintiff and Nieman Foods are Illinois citizens (09-cv-10217 Doc. 24; MDL 2100 Doc. 499). The Bayer Defendants, on the other hand, are not Illinois citizens (See Doc. 2 pp. 5-6). Also pending is Niemann Foods' Motion to Dismiss (09-cv-10217 Doc. 9; MDL 2100 Doc. 349), which Plaintiff has opposed (09-cv-10217 Doc. 23).

The Court must first consider Plaintiff's Motion to Remand, as if it finds diversity jurisdiction did not exist at the time of removal, it will

not have jurisdiction to consider Niemann Foods' Motion to Dismiss.
However, because the resolution of Plaintiff's Motion to Remand depends
on whether Niemann Foods was fraudulently joined, the Court's decision
will, in essence, determine the issues pending in Niemann Foods' Motion to
Dismiss.  For reasons stated herein, the Court finds that Niemann Foods
has been fraudulently joined and Plaintiff's Motion for Remand is therefore
denied.

**I. DISCUSSION**

**A.    Preliminary Matters**

**1.    Failure to Attach Requisite State Papers to the Notice of Removal**

Plaintiff contends that this case should be remanded because a
copy of the summons was not attached to the notice of removal (09-cv-
10217 Doc. 11 p. 5), thus making the removal defective under 28 U.S.C. §
1446(a).  Under 28 U.S.C. § 1446(a), a defendant desiring to remove a case
to federal court must file a notice of removal together with "all process,
pleadings, and orders served upon such defendant or defendants."  28
U.S.C. § 1446(a).

In this case, it is undisputed that the Bayer Defendants failed
to follow the required procedure by failing to attach a copy of the summons
to the notice of removal.  Shortly after expiration of the thirty-day removal
period, the Bayer Defendants supplemented their original, timely notice of

removal to include the summons.[3]  (09-cv-10217 Doc. 12; MDL 2100 Doc.

346).  Plaintiff then filed a motion to strike the supplement (09-cv-10217

Doc. 15), which the Court denied.  (09-cv-10217 Doc. 21; MDL 2100 Doc

376).  Plaintiff contends that the defect was procedural and therefore,

cannot be cured after expiration of the thirty-day period within which

Defendants were required to file a proper notice of removal.  (09-cv-10217

Doc. 11 p. 5).

There are two different viewpoints on this issue.  "The

predominant view is that the removing party's failure to file the required

state court papers is 'curable in the federal courts if there is a motion to

remand.' " *See Yellow Transp., Inc. v. Apex Digital, Inc.*  406 F.Supp.2d

1213, 1214 -1216 (D. Kan.,2005) *quoting* 14C Charles Alan Wright et al.,

Federal Practice & Procedure § 3733, at 350-51 (3d ed.1998).  *See e.g.*

*Usatorres v. Marina Mercante Nicaraguenses, S.A., 768 F.2d 1285 (11th*

*Cir. 1985)* (failure to file state court papers required by removal statute can

be remedied); *Covington v. Indemnity Insurance Co. of North America*,

251 F.2d 930, 933 (5th Cir.1958) (failure to attach copies of state court

papers to removal petition was a "mere modal or procedural defect" which

could later be cured and did not require remand); *Riggs v. Fling Irr., Inc.*,

535 F. Supp. 2d 572 (W.D. N.C. 2008) (failure to attach summonses and

---

[3] The date of service upon the first-served defendant was November 24, 2009.  (09-cv-10217 Doc. 2 pp. 2-3).  The notice of removal was filed on December 17, 2009.  (09-cv-10217 Doc. 2).  The thirty-day removal period expired on December 24, 2009.  The Bayer Defendants supplemented their notice of removal on December 29, 2009.  (09-cv-10217 Doc. 12; MDL 2100 Doc. 346).

other state court papers was curable);  *Boyce v. St. Paul Fire & Marine Ins. Co.*, Case No. 92-6525, 1993 WL 21210, at *3 (E.D. Pa. Jan.28, 1993) (noting procedural defect was remedied when the court received a copy of the state court records); *Dri Mark Prods., Inc. v. Meyercord Co.*, 194 F.Supp. 536, 538 (S.D.N.Y.1961) (noting defect cured where defendant filed the required exhibits along with its opposition to the motion to remand).

This viewpoint has also been adopted by the Seventh Circuit. *See Riehl v. National Mutual Insurance Co.*, 374 F.2d 739 (7th Cir.1967). In *Riehl,* the *Seventh* Circuit rejected the argument that it did not acquire jurisdiction over the case because the state court complaint was not filed in the federal district court. *Id*. at 741.  The court explained that the omission did not frustrate the basic purpose of Rule 1446(a) and was "a minor irregularity of no consequence." *Id*.  In the instant case, failure to attach a copy of the summons is a minor defect which did not prejudice the plaintiff. Accordingly, the Court concludes that the defect was curable and does not warrant removal.

### 2. The Forum Defendant Rule

Plaintiff invokes the "forum defendant rule" in support of her motion for remand.  (09-cv-10217, Doc. 11 pp. 3 n.2, 4-5).  Pursuant to the forum defendant rule, a diversity case may not be removed to federal court if any properly joined defendant is a citizen of the state in which the case was filed.  *See* 28 U.S.C. § 1441(b) (providing that a diversity case "shall be

removable only if none of the parties in interest properly joined and served

as defendants is a citizen of the State in which such action is brought.");

*LaMotte v. Roundy's, Inc.,* 27 F.3d 314, 315 (7th Cir. 1994).  Where a case

is removed in violation of the forum defendant rule, the removal is

procedurally defective.  *See Hurley v. Motor Coach Indus., Inc.,* 222 F.3d

377, 378-80 (7th Cir.2000); *Yount v. Shashek,* 472 F.Supp.2d 1055, 1058

(S.D.Ill.2006).

Plaintiff contends that because Niemann Foods is an Illinois

corporation, the case was not properly removed. (09-cv-10217, Doc. 11 p. 3

n.2, 4-5).  There is, however, an exception to the forum defendant rule.  The

forum defendant rule is not applicable to defendants that have been

fraudulently joined to defeat diversity.  *See Yount v. Shashek,* 472 F. Supp.

2d 1055, 1059 (S.D. Ill. 2006) *citing Bova v. U.S. Bank, N.A.,* 446 F. Supp.

2d 926, 931 (S.D. Ill. 2006); *accord Stephens v. Burns & Wilcox, Ltd.,* No.

09-860-GPM, 2009 WL 3756444, at *3 (S.D. Ill. Nov. 7, 2009) ("Because

the forum defendant rule applies only to defendants that have been

properly joined and served at the time of removal within the meaning of

Section 1441(b), the rule does not apply where a forum defendant has been

fraudulently joined to defeat diversity jurisdiction.").  For the reasons set

forth below, the Court finds that Niemann Foods has been fraudulently

joined.  Accordingly, the forum defendant rule is inapplicable in the instant

case.

**B.     Legal Standard**

**1.     Removal**

The removal statute, 28 U.S.C. § 1441, is construed narrowly, and doubts concerning removal are resolved in favor of remand.  *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir.1993).  Defendants bear the burden to present evidence of federal jurisdiction once the existence of that jurisdiction is fairly cast into doubt.  *See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir.1997).  "A defendant meets this burden by supporting [its] allegations of jurisdiction with 'competent proof,' which in [the Seventh Circuit] requires the defendant to offer evidence which proves 'to a reasonable probability that jurisdiction exists.' " *Chase v. Shop 'N Save Warehouse Foods, Inc.*, 110 F.3d 424, 427 (7th Cir.1997) (citations omitted).  However, if the district court lacks subject matter jurisdiction, the action must be remanded to state court pursuant to 28 U.S.C. § 1447(c).

The statute regarding diversity jurisdiction, 28 U.S.C. § 1332, requires complete diversity between the parties plus an amount in controversy which exceeds $75,000, exclusive of interest and costs.  Complete diversity means that "none of the parties on either side of the litigation may be a citizen of the state of which a party on the other side is a citizen." *Howell v. Tribune Entertainment Co.*, 106 F.3d 215, 217 (7th Cir. 1997) (citations omitted).

### 2. Fraudulent Joinder

"A plaintiff typically may choose its own forum, but it may not join a nondiverse defendant simply to destroy diversity jurisdiction." *Schur v. L.A. Weight Loss Centers, Inc.* 577 F.3d 752, 763 (7th Cir. 2009). *See also Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir.1993) (collecting cases). "The 'fraudulent joinder' doctrine, therefore, permits a district court considering removal "to disregard, for jurisdictional purposes, the citizenship of certain nondiverse defendants, assume jurisdiction over a case, dismiss the nondiverse defendants, and thereby retain jurisdiction." *Schur*, 577 F.3d at 763.

In the context of jurisdiction, "fraudulent" is a term of art. *See Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir.1992). "Although false allegations of jurisdictional fact may make joinder fraudulent ... in most cases fraudulent joinder involves a claim against an in-state defendant that simply has no chance of success whatever the plaintiff's motives." *Id.* (collecting cases). To prove fraudulent joinder, the out-of-state defendant must "show there exists no 'reasonable possibility that a state court would rule against the [in-state] defendant,' " *Schwartz v. State Farm Mutual Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir.1999) (citing Poulos, 959 F.2d at 73)). The defendant bears a heavy burden in this regard. *Id. See also Schur*, 577 F.3d at 764 (in a fraudulent joinder analysis, the "district court must ask whether there is 'any reasonable possibility' that the plaintiff

could prevail against the non-diverse defendant").[4]  *This* burden can be met by introducing uncontradicted evidence.  *See Faucett v. Ingersoll-Rand Mining & Machinery Co.*, 960 F.2d 653, 655 (7th Cir.1992) (where uncontradicted affidavit of the non-diverse defendant attesting to facts showing that the plaintiff could not establish a cause of action against him under Illinois law was sufficient to establish fraudulent joinder).

## C.    Discussion

### 1.    Fraudulent Joinder

Plaintiff brings five counts against Niemann Foods:  (1) strict products liability; (2) negligence; (3) failure to warn; (4) breach of implied warranty, and (5) fraudulent misrepresentation under the Illinois Consumer Fraud Act (09-cv-10217 Doc. 2-1).  As these are state law claims, Illinois substantive law applies.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).  The Court addresses each Count below.

#### a.    Counts I – III;  Strict Product Liability, Negligence,

The viability of Counts I through III depends on whether Illinois imposes an affirmative duty on pharmacists to warn customers about a drug's risks and side effects.[5]  Accordingly, resolution of the

---

[4] Plaintiff asserts that fraudulent joinder occurs only if there is "no possibility" the plaintiff could prevail against the nondiverse defendant in state court.  (3:09-cv-10217 Doc. 11 p. 2).  However, as the Bayer Defendants correctly counter, the governing standard is whether there is "any reasonable possibility" of success in state court.  *See Schur*, 577 F.3d at 764; *Poulos*, 959 F.2d at 73

[5] As previously noted, the Complaint does not identify which claims are alleged against individual Defendants.  Rather, all counts in the Complaint are directed toward "Defendants."  Accordingly, it is impossible to ascertain whether Plaintiff is attempting to assert strict liability and negligence claims based on theories of defective design or manufacture.  To the extent Plaintiff's complaint attempts to allege such

fraudulent joinder issue, with respect to these counts, depends on whether Niemann Foods owed Plaintiff a duty to warn.

As a preliminary matter, this Court notes that the issue before it is a narrow one.  Plaintiff is not alleging that Niemann Foods incorrectly filled her prescription or that Niemann Foods negligently performed a voluntary undertaking.  (*See* 3:09-cv-10217, Doc. 2-1).  Nor is Plaintiff alleging that Niemann Foods had patient-specific knowledge about her drug allergies and therefore knew the prescribed drug was contraindicated for her.  *See Id.*  In each of these scenarios, Plaintiff would have a valid claim against Niemann Foods under Illinois law.  *See* Jones v. Walgreen *Co.*, 265 Ill. App. 308 (Ill. App. 1932) (when doubt exists as to what drug has been prescribed, pharmacist has a duty to take reasonable precautions to ensure prescription is accurately filled); *Frye v. Medicare-Glaser Corp.*, 605 N.E.2d 557 (where pharmacy voluntarily provides warning about prescription drug to customer, the extent of pharmacy's duty is to perform the voluntary undertaking without negligence); *Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118, 1129 (Ill. 2002) (pharmacy has "narrow duty to warn" when it has "patient-specific information about drug allergies, and knows that the drug being prescribed is contraindicated for the individual patient").  Rather, Plaintiff's failure to warn claims assert that the "Defendants" are liable, in both strict liability and negligence, for failing to

---

claims against Niemann Foods, a non-manufacturing pharmacy,  her claims must fail.  *See Kirk v. Michael Reese Hosp.*, 513 N.E.2d 387, 391-394 (Ill. 1987); *Leesley v. West*, 518 N.E.2d 758 (Ill. App. 1988).

provide the medical community and the public with adequate warnings regarding the potential risks of taking Yasmin.  (3:09-cv-10217 Doc. 2-1, pp. 12-20).  Accordingly, the limited question before the Court is whether, under Illinois law, a pharmacist, that correctly fills a prescription and does not have any patient-specific knowledge, has an affirmative duty to warn a customer about a prescription drug's potential side effects.

Research indicates that Illinois courts have consistently held a pharmacist does not have an affirmative duty to provide customers with a warning regarding a drug's potential risks or side effects.  *See Happel,* 766 N.E.2d at 1129 (absent an allegation of "specialized knowledge," pharmacies have no affirmative duty to warn patients of potential adverse reactions to prescription drugs); *Leesley v. West*, 518 N.E.2d 758 (Ill. App. Ct. 1988) (pharmacists have no duty to provide patients with a written copy of a prescription drug's known risks and side effects); *Jones v. Irvin*, 602 F. Supp. 399, 401 (S.D. Ill. 1985) ("the overwhelming majority of recent state cases stand for the proposition that the pharmacist has no duty to warn").

In addition, Illinois Courts have held that (1) pharmacists have no duty to warn that a drug is being prescribed in an excessive amount *Fakhouri v. Taylor*, 618 N.E.2d 518, 520-521(Ill. App. 1993)*; Eldridge v. Eli Lilly & Co.*, 485 N.E.2d 551 (Ill. App. Ct. 1985), and (2) a pharmacy that voluntarily includes a warning about one or more of a drug's risks does

not undertake a duty to warn about all possible risks.  *See Frye v. MedicareGlaser Corp.*, 605 N.E.2d 557, 560-561 (Ill. 1992); *Kasin v. Osco Drug, Inc.,* 728 N.E.2d 77, 79-81 (Ill. App. Ct. 2000).

    One of the stated reasons for declining to impose a duty to warn on pharmacists is that imposing such a duty would run contrary to the public policy against "expanding the liability risks of health professionals."  *Leesley*, 518 N.E.2d at 763.  Additional reasons cited by Illinois courts include:  (1) Interference with the doctor-patient relationship *see Fakhouri*, 618 N.E.2d at 521("[t]o impose a duty to warn on the pharmacist would be to place the pharmacist in the middle of the doctor-patient relationship, *without* the physician's knowledge of the patient") (emphasis in original); *Eldridge*, 485 N.E.2d at 553 (because "[t]he propriety of a prescription depends not only on the propensities of the drug but also on the patient's condition" to fulfill such a duty the "pharmacist would have to interject himself into the doctor-patient relationship and practice medicine without a license"); *Jones v. Irvin*, 602 F.Supp. 399, 403 (S.D. Ill. 1985) ("[p]lacing these duties to warn on the pharmacist would only serve to compel the pharmacist to second guess every prescription a doctor orders in an attempt to escape liability"); (2) the magnitude of the burden of imposing a duty to warn is too great *see Leesley*, 518 N.E.2d  at 763 (if such a duty were imposed pharmacists would face the "oppressive burden of retaining and cataloguing every document received to be certain

each is distributed with the appropriate drug"; (3) the injury that might result due to the absence of a particular warning is not reasonably foreseeable *see Leesley*, 518 N.E.2d at 763 "[t]he foreseeability of injury to an individual consumer in the absence of any particular warning also varies greatly depending on the medical history and condition of the individual-facts which we cannot reasonably expect the pharmacist to know"); and (4) imposing a duty to warn would be inconsistent with the learned intermediary doctrine.[6]  *See Id.* at 762-763 (declining to impose a duty to warn on the defendant pharmacy, in part, because it would be "illogical and inequitable" to impose a duty on a pharmacist that is not imposed on the drug's manufacturer).

Considering these opinions, it is clear that in Illinois, a pharmacist does not have an affirmative duty to warn customers about a prescription drug's dangerous propensities or side effects.  The bases for declining to impose such a duty are particularly germane in this case because Plaintiff is alleging that the Bayer Defendants concealed information from the public and medical community regarding the dangerous propensities of Yasmin.  Certainly, if Illinois pharmacists do not have a duty to warn customers directly about *known* risks or side effects (absent patient-specific knowledge related to a contraindication), they do

---

[6] The learned intermediary doctrine provides that pharmaceutical manufacturers do not have a duty to directly warn patients about a prescription drug's dangerous propensities.  Rather, pharmaceutical manufacturers have a duty to inform physicians of the dangers of prescription drugs, and that physicians have a duty to warn patients of those dangers. *See Kirk v. Michael Reese Hospital and Medical Center*, 513 N.E.2d 387, 392 (Ill. 1987) (considering a drug manufacturer's duty to warn and adopting the learned

not have a duty to warn about risks and side effects that have been
concealed by the pharmaceutical manufacturer and are therefore *unknown.*

       As a final matter, the Court addresses the Plaintiff's argument
pertaining to the common defense rule.  (3:09-cv-10217 Doc. 11 pp. 3-4).
The common defense rule provides that "where there are colorable claims
or defenses asserted against or by diverse and non-diverse defendants
alike, the court may not find that the non-diverse parties were fraudulently
joined based on its view of the merits of those claims or defenses.  Instead,
that is a merits determination which must be made by the state court."
*Brooks v. Merck & Co.*, 443 F.Supp.2d 994, 1002 (S.D. Ill. 2006) (*quoting
Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 113 (3d Cir.1990)). *See also
LaRoe v. Cassens & Sons, Inc.*, 472 F.Supp.2d 1041, 1048 (S.D. Ill. 2006);
*Hardaway v. Merck & Co.*, Civil No. 06-465-GPM, 2006 WL 2349965, at *2
(S.D. Ill. Aug. 11, 2006).

       Plaintiff contends the Court may not find fraudulent joinder
because "every claim made against Defendant Nieman[n] Foods (the non-
diverse defendant) is also being made against the diverse Bayer
Defendants."  (3:09-cv-10217 Doc. 11 pp. 3-4).  Plaintiff misconstrues the
common defense doctrine.  The fact that the same claims have been
asserted against diverse and non-diverse defendants does not prevent a
finding of fraudulent joinder.  Rather, the common defense doctrine
provides that when the same argument or defense defeats a plaintiff's claim

---

intermediary doctrine).

against diverse and non-diverse defendants that argument or defense may not be the basis for a fraudulent joinder finding.  *See e.g.*, *Cincinnati Ins. Co.,* 2007 WL 1021975, at 6 (refusing to find fraudulent joinder on the basis of a defense of the statute of limitations common to diverse and non-diverse defendants alike).

Although it is not entirely clear from Plaintiff's motion to remand, Plaintiff also appears to be asserting that a pharmacy is only protected from liability where the manufacturing defendant has provided the prescribing physicians with adequate warnings, The Court finds no support for Plaintiff's contention.  As discussed above, the learned intermediary doctrine, which absolves a pharmaceutical manufacturing defendant of liability for failure to warn claims if the manufacturing defendant provided adequate warnings to the prescribing physician, is one of several factors considered by Illinois courts that have declined to impose a duty to warn on pharmacists.  Specifically, Illinois courts have held that it would be inequitable to impose a duty on pharmacists that is not imposed on pharmaceutical manufacturers.  *See e.g. Leesley*, 518 N.E.2d 762-763. The fact that the learned intermediary doctrine has been an influential factor in cases involving a pharmacist's duty to warn does not support the Plaintiff's common defense argument.

In the instant case, Plaintiff's failure to warn claims have no reasonable chance of success against Niemann Foods because Niemann

Foods did not have patient-specific information about a contraindication and because, absent such specialized knowledge, Niemann Foods did not have a duty to warn its customers about the risks and side effects of Yasmin.  The success or failure of the Bayer Defendants in raising the learned intermediary defense is irrelevant.

Moreover, as the Bayer Defendants note in their memorandum in opposition to Plaintiff's motion to remand, in similar cases nationwide, courts have afforded pharmacies the same protection despite allegations that the pharmaceutical company provided an insufficient warning and concealed the medication's dangers from the public.  *See e.g.*, *In re Baycol*, 2004 WL 1118642, at *3-4 (failure to warn claim against pharmacy fails because the "thrust of the Complaint" is that manufacturer failed to inform the public, including pharmacies, that drug was dangerous; *In re Rezulin*, 133 F. Supp. 2d at 290 ("the theory underlying the complaints is that the manufacturer defendants hid the dangers of Rezulin from plaintiffs, the public, physicians, distributors, and pharmacists – indeed, from everyone. Plaintiffs' allegations that pharmacists knew and failed to warn the dangers therefore are purely tendentious"); *id.* at 293 ("a failure to warn claim presupposes the defendant's knowledge of the danger," and the complaints "allege that the manufacturer defendants concealed the risks"); *Louis v. Wyeth-Ayerst Pharms., Inc.,* No. 5:00CV102LN, 2000 U.S. Dist. LEXIS 22694, at *6-7 (S.D. Miss. Sept. 25, 2000) ("the complaint, the major

theme of which is the manufacturers' intentional concealment of the true

risks of the drug(s), coupled with the dissemination through various

m3edia or false and misleading information of the safety of the drug(s) at

issue, belies any suggestion of knowledge, or reason to know by these

resident defendants [pharmacies]…In the case of plaintiffs' specific

allegations of concerted, unabated fraud and concealment by the

manufacturer defendants from virtually everyone, including pharmacists,

no factual basis can be drawn from plaintiffs' complaint for the entirely

general and conclusory charge that these 'defendants' knew or had reason

to know of the risks.").

### b.    Count IV Implied Breach of Warranty

Plaintiff asserts a claim for breach of implied warranty against

Niemann Foods based on its role as the pharmacy that dispensed Yasmin

to the Plaintiff.  (09-cv-10217 Doc. 2-1, pp. 20-23).  It is not entirely clear

whether Plaintiff is alleging a breach of implied warranty claim under the

Illinois Uniform Commercial Code ("Illinois UCC") or is attempting to allege

a common law breach of implied warranty claim.  However, in Illinois,

other than two narrowly defined exceptions which do not apply here, courts

have only recognized implied warranties involving "transactions in goods"

as defined by the Illinois Commercial Code ("Illinois UCC").  *Dunlap v.*

*First National Bank of Danville*, 76 F. Supp. 2d 948, 961 (C.D. Ill. 1999)

*citing American Labelmark Co. v. Akiyama Corp. of America*, 1993 WL

460838, *2 (applying Illinois law).  *See also Mekertichian v. Mercedes-Benz U.S.A., L.L.C.*  347 Ill.App.3d 828, 832 (Ill. App. 2004); 810 ILCS 5/2-102.  *See e.g., Naiditch v. Shaf Home Builders, Inc.*, 160 Ill. App. 3d 245, 264 (Ill. App. 1987); *Harmon v. Dawson*, 175 Ill. App. 3d 846, 849, 530 (Ill. App. 1988).  *See also Fink v. DeClassis* 745 F. Supp. 509, 515-516 (N.D. Ill. 1990).   The Court, therefore, analyzes Plaintiff's breach of implied warranty claim under the Illinois UCC.

In the instant case, to maintain a cause of action for breach of implied warranty, Plaintiff must first establish that the subject transaction is considered a "transaction in goods" under the Illinois UCC.  The Illinois UCC defines goods as "all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale." 810 ILCS 5/2-105(1).  Prescription medication, such as Yasmin, would constitute a good under this definition.  The practice of pharmacy, however, involves more than the provision of pharmaceuticals; it also involves the provision of professional healthcare services.  *See e.g.,* 225 ILCS 85/3(d)(1) ("practice of pharmacy" includes "the interpretation and the provision of assistance in the monitoring, evaluation, and implementation of prescription drug orders"); 225 ILCS 85/3(d)(4) ("practice of pharmacy" includes "patient education on the proper use or delivery of medications"); 225 ILCS 85/3(d)(7) ("practice of pharmacy" includes the "provision of patient counseling"); 225 ILCS 85/3(r)(3) ("patient counseling" includes

"facilitation of the patient's understanding of the intended use of the medication"); 225 ILCS 85/3(d)(9) ("practice of pharmacy" includes "the provision of those acts or services necessary to provide pharmacist care"); 225 ILCS 85/3(d)(10) ("practice of pharmacy" includes "medication therapy management"); ILCS 85/3(d); 225 ILCS 85/1 (the practice of pharmacy in Illinois is "a professional practice affecting the public health, safety and welfare").  *See also Walgreen Co. v. Selcke*, 230 Ill. App. 3d 442, 451 (Ill. App. 1992) (acknowledging that the practice of pharmacy involves more than pulling packages from a shelf and ringing up a sale; the practice of pharmacy involves "the exercise of pharmaceutical interpretation, skill or knowledge of medicine or drugs.  The pharmacist chooses and describes the desired ingredient, as prescribed by the physician, and [makes determinations] from his or her own knowledge, training and experience").

        Accordingly, a transaction such as the one at issue in this case, is a mixed transaction involving both the provision of goods and the provision of services.  In Illinois, where a transaction involves both the provision of goods and services, courts apply the "predominant purpose test" to determine whether there has been a transaction in goods.  Pursuant to the predominant purpose test, "there is a 'transaction in goods' only if the contract is predominantly for goods and incidentally for services." *Brandt v. Boston Scientific Corp.*, 204 Ill.2d 640, 275 Ill.Dec. 65, 792 N.E.2d 296 (Ill.2003) citing *Belleville Toyota, Inc. v. Toyota Motor Sales*,

*U.S.A., Inc.*, 199 Ill.2d 325, 352-353, 264 Ill. Dec. 283, 770 N.E.2d 177 (2002).

The Illinois Supreme Court applied the predominant purpose test to an analogous transaction in *Brandt v. Boston Scientific Corp.*, 204 Ill.2d 640, 275 Ill.Dec. 65, 792 N.E.2d 296 (Ill.2003).[7]  The transaction at issue in *Brandt*, involved the sale of a medical device, by a health center, in conjunction with the provision of other healthcare services.   The court concluded that although the transaction included the sale of a medical device, the "predominate nature of the transaction as a whole" was the provision of medical treatment for the plaintiff's infection and thus, the transaction was primarily one for services.  *Id.* at 652-653.  In so holding, the court noted that the plaintiff did not come to the health center "merely to buy a [medical device] as one buys goods from a store."  Rather, the plaintiff came to the health care center to receive treatment for her condition and the treatment she received involved a number of services in addition to the provision of the medical device.

The transaction at issue in the instant case is analogous to the transaction at issue in *Brandt.*  In the instant case, the sale of Yasmin was just one aspect of the transaction between Niemann Foods and the Plaintiff.  Prescription drugs are not available to the general public.  They can only be

---

[7] Before applying the predominant purpose test, the court examined and declined to follow *Cunningham v. MacNeal Memorial Hospital*, 47 Ill.2d 443, 266 N.E.2d 897 (1970).  The Court explained that *Cunningham* was not applicable because, among other things, the decision was issued prior to the adoption of the predominant purpose test.  The Court also noted that the *Cunningham* rationale was applied in *Berry v.*

legally distributed pursuant to a valid prescription from a licensed

physician.  *See* 21 U.S.C. § 353(b); 410 ILCS 620/2.37; 410 ILCS 620/3.21.

A pharmacist acts as the gate-keeper of prescription medication,

monitoring the distribution and implementation of prescription drug

orders.  Thus, a pharmacist provides a service to the patient, the physician,

and the community.   Moreover, the pharmacist provides a number of

professional healthcare services, including utilizing professional skill and

care to interpret and evaluate the prescription; educating patients as to the

intended use of the medication and manner of ingestion; and maintaining

necessary records for compounding, labeling, and storing pharmaceuticals.

Considering the entirety of the transaction, as the Illinois

Supreme Court did in *Brandt*, it is evident that the sale of pharmaceuticals

is just one aspect of the transaction between patient and pharmacist. The

predominant purpose of such transactions is the provision of professional

healthcare services which are a necessary step in completing the treatment

regimen selected by the patient's physician.  Therefore, the subject

transaction was not a "transaction in goods" and Plaintiff's breach of

warranty claim has no reasonable chance of success.

In addition, as the Court has already discussed, in Illinois,

pharmacies and pharmacists are immune from failure to warn claims.

Allowing plaintiffs to pursue a breach of warranty claim against

---

*G.D. Searle & Co.*, 56 Ill.2d 548, 554-55, 309 N.E.2d 550 (1974).  Accordingly, *Cunningham* and *Berry* are not applicable to the breach of warranty analysis in this case.

pharmacists would nullify this protection and would be inconsistent with
the policy against "expanding the liability risks of health professionals." *Id.*
at 763.  *See also Id*. at 763.

Further, although the Court need not address the issue here,
the Court questions whether Plaintiff could establish the requisite elements
of a breach of implied warranty claim (either merchantability or for a
particular purpose) under the Illinois UCC in a state that does not recognize
a duty to warn on the part of the pharmacist and that has adopted the
learned intermediary doctrine with respect to manufacturing defendants.
*See e.g. Presto v. Sandoz Pharms. Corp.*, 487 S.E.2d 70,75
(Ga.App.Ct.1997)  (pharmacist was "entitled to summary judgment on the
[UCC] warranty claim because it neither manufactured nor prescribed the
subject drug"); *Makripodis v. Merrell-Dow Pharmaceuticals*, 361 Pa.Super.
589, 523 A.2d 374, 376 (1987) (druggist does not warrant that prescription
drugs are fit for "ordinary uses," as use of drug is a decision made by the
physician); *Bichler v. Willing*, 58 A.D.2d 331, 397 N.Y.S.2d 57, 58-59
(1977) (warranties are not implied, as patient places confidence in doctor's
skill, not pharmacist's); *McLeod v. W.S. Merrell Co*., 174 So.2d 736, 738-
39 (Fla.1965).

     **c.**    **Count V Illinois Consumer Fraud Act**

To state a cause of action under the Illinois Consumer Fraud
Act, five elements must be proven: (1) a deceptive act or unfair practice

occurred, (2) the defendant intended for plaintiff to rely on the deception,
(3) the deception occurred in the course of conduct involving trade or
commerce, (4) the plaintiff sustained actual damages, and (5) such damages
were proximately caused by the defendant's deception. *Dubey v. Public
Storage, Inc.* 918 N.E.2d 265, 277, 335 Ill.Dec. 181, 193 (Ill.App. 2009).
Moreover, a fraud claim must rest on "specific allegations of facts from
which fraud is the necessary or probable inference," including "what
misrepresentations were made, when they were made, who made the
misrepresentations and to whom they were made." *Bd. Of Educ. V. A C &
S, Inc.,* 546 N.E.2d 580, 593-94. *See also ABN Amro, Inc. v. Cap. Int'l
Ltd.,* 595 F. Supp. 2d 805, 848-849 ("A complaint alleging a violation of the
Illinois Consumer Fraud Act must be pleaded with the same particularity
and specificity under Rule 9(b) as that required for common law fraud."
Specifically, a plaintiff must state the identity of the person making the
misrepresentation, the time, place, and content of the misrepresentation,
and the method by which the misrepresentation was communicated.").

       In the instant case, the Complaint states that Niemann Foods
was "in the business of selling, distributing, labeling, marketing, and/or
placing, either directly or indirectly through third parties or related entities,
pharmaceutical drugs including Yasmin and YAZ into the interstate
commerce, including in the State of Illinois, and derived substantial
revenue from these activities." (09-cv-10217 Doc. 2-1 p. 20). Other than

that, the boilerplate Complaint only asserts generic allegations against

"Defendants."  In fact, even the allegations dealing with the development,

production, labeling, and marketing of Yasmin, which clearly do not

implicate Niemann Foods, are directed toward "Defendants."

       The consumer fraud count is no exception.  In her consumer

fraud count Plaintiff asserts generally that "*Defendants* fraudulently

misrepresented and published information in various forms of media. . .

regarding their product's character, safety, quality and/or effectiveness,

including, but not limited to, the public ad campaigns which were the

subject of the FDA's 2003, 2008, and 2009 warnings."  (09-cv-10217 Doc.

2-1 p. 85).  There are no specific allegations concerning what

representations were made, to whom, in what manner such representations

were made, or when such representations were made.  Plaintiff's ICFA

count cannot succeed against Niemann foods in light of Plaintiff's failure to

meet her obligation of identifying with particularity the fraudulent conduct

in which Niemann foods allegedly engaged.

       The Court also notes that the thrust of the Complaint is that

the Bayer Defendants failed to inform the public and the medical

community about Yasmin's dangerous propensities.  Assuming that the

Bayer Defendants engaged in the alleged deceptive conduct, Niemann Foods

would have no knowledge regarding the alleged dangerous propensities of

Yasmin.  Accordingly, the facts asserted by the Plaintiff could not possibly

create liability as to Niemann Foods under ICFA.  *See Faucett v. Ingersoll-Rand Min. & Machinery Co.* 960 F.2d 653 (negligence claim against non-diverse defendant had no reasonable chance of success where undisputed facts demonstrated non-diverse defendant could not be liable).

For the reasons stated herein, the Court finds that, as to Niemann Foods, the allegations in the complaint fall far short of alleging a claim under the Illinois Consumer Fraud Act.[8]

### 2.   Amount in Controversy

In determining whether the jurisdictional threshold amount has been met, pursuant to § 1332, the Court must evaluate "the controversy described in the plaintiff's complaint and the record as a whole, as of the time the case was removed." *Uhl v. Thoroughbred Tech. and Telecomm., Inc.*, 309 F.3d 978, 983 (7th Cir.2002) (*citing Shaw v. Dow Brands, Inc.*, 994 F.2d 364, 366 (7th Cir.1993)).  In the event that any challenges are made regarding the amount in controversy, the party asserting the existence of federal subject matter jurisdiction has the burden of affirmatively establishing such jurisdiction. *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 540 (7th Cir.2006); *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 447 (7th Cir.2005).  If little information is provided as to the value of a plaintiff's claims from the onset, a court can find, at times, that a defendant's "good-faith estimate of the stakes is acceptable if it is plausible

and supported by a preponderance of the evidence." *Oshana v. Coca-Cola Co.*, 472 F.3d 506, 511 (7th Cir.2006) (*citing Rubel v. Pfizer, Inc.*, 361 F.3d 1016, 1020 (7th Cir.2004)).   Moreover, a plaintiff "may not manipulate the process" to defeat federal jurisdiction and force a remand once the case has been properly removed. *Gould v. Artisoft, Inc.*, 1 F.3d 544, 547 (7th Cir.1993) (citations omitted).

In determining whether a remand is warranted in this case, the Court must look at whether the allegations of Plaintiff's Complaint show that the amount in controversy exceeds $75,000.   If the allegations are not specific, the Court must then look to whether Defendant's estimate of the amount in controversy in this case was "plausible and supported by a preponderance of the evidence."

In her Complaint, Plaintiff alleges that, as a result of her exposure to Yasmin, she:

> Incurred substantial damages, including, but not limited to injury to her gall bladder sufficient to require its surgical removal, as well as other severe and personal injuries, including future thromboembolic events, which are permanent and lasting in nature, physical pain and mental anguish, diminished enjoyment of life, medical, health, incidental and related expenses, the need for lifelong medical treatment, monitoring and/or medications, and the fear of developing any of the above named health consequences.

(09-cv-10217 Doc. 2-1 p. 82).   Plaintiff seeks damages for these injuries "in excess of $50,000."   (09-cv-10217 Doc. 2-1 p. 24-25).   The Bayer

---

[8] The fact that Plaintiff could amend her complaint is irrelevant.   *See Pullman Co. v. Jenkins*, 305 U.S. 534, 537-38, 59 S.Ct. 347, 83 L.Ed. 334 (1939) (court determines validity of removal based upon pleadings in

Defendants contend that "(a) Plaintiff's claimed severe and permanent injuries; (b) Plaintiff's claimed past and anticipated future expenses for medical care, monitoring, and medications; and (c) Plaintiff's claimed other physical, emotional, and economic injuries" clearly establish that the amount in controversy exceeds $75,000, exclusive of interest and costs. (09-cv-10217 Doc. 24 p. 13; MDL 2100 Doc. 499 p. 13).  The Court agrees. Given the severe and ongoing nature of the injuries alleged, the Court finds that it is plausible and supported by the preponderance of the evidence that the amount in controversy has been established.  *See e.g.*, *McCoy by Webb v. General Motors Corp.*, 226 F.Supp.2d 939, 941 ("courts have routinely held that when plaintiffs allege serious, permanent injuries and significant medical expenses, it is obvious from the face of the complaint that the plaintiffs' damages exceeded the jurisdictional amount").  The Court concludes that it has diversity jurisdiction of Plaintiff's cause of action.

### III.CONCLUSION

For the foregoing reasons, the Court **DENIES** Plaintiff's motion to remand (09-cv-10217 Doc. 11).

**IT IS SO ORDERED**

This 26th day of February, 2010

/s/  David R Herndon

Chief Judge
United States District Court

---

case at time of petition for removal).