**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF ILLINOIS**

———————————————————— )
IN RE YASMIN AND YAZ (DROSPIRENONE) )   3:09-md-02100-DRH-PMF
MARKETING, SALES PRACTICES AND )
PRODUCTS LIABILITY LITIGATION )   **MDL No. 2100**
———————————————————— )

**This Document Relates to:**
————————————————————

**CATHY M. WALTON,**

      **Plaintiff,**                                **Case No. 3:09-cv-10217-DRH-PMF**

**v.**

**BAYER CORPORATION, BAYER**
**HEALTHCARE LLC, BAYER**
**PHARMACEUTICALS**
**CORPORATION, BAYER**
**HEALTHCARE PHARMACEUTICALS**
**INC., BERLEX LABORATORIES, INC.,**
**BERLEX, INC., JOHN DOE**
**MANUFACTURERS A-Z,**
**NIEMAN FOODS, INC., JOHN DOE**
**DISTRIBUTORS A-Z,**

      **Defendants**
——————————————————————————————————————

## ORDER

**HERNDON, Chief Judge:**

## INTRODUCTION

      This case was originally filed in the Circuit Court of the Third

Judicial Circuit, Madison County, Illinois, and was removed from state court to

this Court by Defendants, Bayer Corporation, Bayer Healthcare LLC, and Bayer

HealthCare Pharmaceuticals, Inc. (formerly known as Berlex Laboratories, Inc.

and Berlex, Inc.), on its own behalf and as successor by merger to Bayer

Pharmaceuticals Corporation [1] (collectively, "the Bayer Defendants") on the basis

of diversity jurisdiction.    Plaintiff in turn moved for remand to state court (09-cv-

10217 Doc. 11).  In an order issued contemporaneously herewith, the Court

denied Plaintiff's motion for remand, finding that Defendant Niemann Foods, Inc.[2]

("Niemann Foods) had been fraudulently joined.

         Plaintiff's claims arise from personal injuries she allegedly suffered

as a result of using Yasmin, an oral contraceptive prescription medication.

Plaintiff asserts claims for strict products liability, negligence, failure to warn,

breach of implied warranty, and statutory fraudulent misrepresentation against

all of the Defendants (09-cv-10217 Doc. 2-1 pp. 2-4).  Plaintiff alleges that the

Bayer Defendants are liable for her alleged injuries because they were "engaged in

the business of developing, designing, licensing, manufacturing, distributing,

selling, marketing, and/or introducing [Yasmin and Yaz] into interstate

commerce."  Plaintiff asserts that Niemann Foods, the pharmacy that allegedly

filled her Yasmin prescription, is subject to liability for her alleged injuries

because it was "in the business of selling, distributing, labeling, marketing, and/or

---

[1] Bayer Pharmaceuticals Corporation, Berlex Laboratories, Inc. and Berlex Inc. are
also named defendants (09-cv-10217 Doc. 2-1 pp. 3-4).  The Berlex entities now
operate as Bayer HealthCare Pharmaceuticals Inc. (09-cv-10217 Doc. 2 pp. 1 n1,
5).  Bayer Pharmaceuticals Corporation was merged into Bayer HealthCare
Pharmaceuticals Inc. as of January 1, 2008 (09-cv-10217 Doc. 2 p. 1 n1).
[2] Niemann Foods Inc. has been incorrectly identified in the Complaint as "Nieman
Foods, Inc." (09-cv-10217 Doc. 24 pp. 1-2).

placing...pharmaceutical drugs including Yasmin and Yaz into interstate commerce" (09-cv-10217 Doc. 2-1 p. 4).

Now before the Court is Niemann Foods motion to dismiss the claims directed against it pursuant to Federal Rule of Civil Procedure 12(b)(6). (09-cv-10217 Doc. 9; MDL 2100 Doc. 349).  For the reasons stated herein the motion is granted.

## ANALYSIS

I.     **Preliminary Matter:  Inclusion of Plaintiff's Case in *In re Yasmin and Yaz (Drospirenone) Marketing, Sales Practices and Products Liability Litigation* (S.D. Ill., MDL No. 2100)**

Plaintiff contends, in her response to Niemann Foods motion to dismiss (09-cv-10217 Doc. 9), that her case is not a part of these consolidated proceedings because 1) there has not been a formal order issued by the JPML specifically transferring this case and/or 2) there has not been a consolidation order from this Court specifically making this case part of these proceedings.  For the reasons discussed below, Plaintiff's argument is without merit.  Because Plaintiff's contention is also relevant to this motion the Court addresses her argument here.

Pursuant to J.P.M.L. Rule 7.5(a), cases filed in the transferee district court that are properly part of the Multidistrict Litigation, are assigned to the transferee judge and made part of the Multidistrict Litigation pursuant to the transferee district court's local practice regarding related cases; No Action on the part of the Multidistrict Litigation Panel is required.  *See* Rule 7.5(a) R.P.J.P.M.L.

> Potential "tag-along actions" filed in the transferee district require no action on the part of the Panel and requests for assignment of such actions to Section 1407 transferee judge should be made in accordance with local rules for the assignment of related actions.

*See also Ten Steps to Better Case Management: A Guide for Multidistrict Litigation Transferee Court Clerks*, The Judicial Panel on Multidistrict Litigation & The Federal Judicial Center, p. 4 (2009) ("Cases filed in the transferee district that properly are part of an MDL (the Panel refers to these actions as xyz cases) should be reassigned to the transferee judge, if necessary, and associated with the master docket. **This reassignment is made locally, without action on the part of the Panel**") (emphasis added); *In re California Wholesale Electricity Antitrust Litigation* 2001 WL 733534, 1 (Jud.Pan.Mult.Lit.) (Jud.Pan.Mult.Lit., 2001) (declining to include case in conditional transfer order because case was already pending in the transferee district court and therefore no action was required); *In re Air Crash Disaster Near Chicago, Ill.*, *on May 25, 1979* 476 F.Supp. 445, 452 (Jud.Pan.Mult.Lit., 1979) ("Tag-along actions originally filed in the transferee district are directed to the transferee judge or judges pursuant to local court rules for the assignment of related actions and require no Panel involvement.").

Pursuant to local practice in the Southern District of Illinois, related cases are assigned to the same judge. *See e.g. Gilmore v. Bayer Corp.* 2009 WL 4789406, 1 (S.D.Ill.) (S.D.Ill.,2009).   The instant case was assigned to the transferee judge for inclusion in these consolidated proceedings pursuant to local practice.[3]   Accordingly, Plaintiff's case is properly part of the *Yasmin and Yaz*

---

[3] Prior to creation of this multidistrict litigation, as the Chief Judge for the Southern District of Illinois, the undersigned judge directed the clerk's office to

*(Drospirenone) Marketing, Sales Practices and Products Liability Litigation* and

no further action is required.

## II.      Motion to Dismiss

### A.      Standard of Review

A motion to dismiss under Rule 12(b)(6) challenges a complaint for

failure to state a claim upon which relief may be granted. See Fed.R.Civ.P.

12(b)(6); *Gen. Elec. Capital Corp. v. Lease Resolution Corp*., 128 F.3d 1074,

1080 (7th Cir.1997).  When ruling on a motion to dismiss for failure to state a

claim under Federal Rule of Civil Procedure 12(b)(6), the Court looks to the

complaint to determine whether it satisfies the threshold pleading requirements

under Federal Rule of Civil Procedure 8.  Rule 8 states that a complaint need only

contain a "short and plain statement of the claim showing that the pleader is

---

assign all cases relating to Yaz and Yasmin  to the undersigned judge, as the
undersigned judge's docket had the lowest number of pending cases.  On October
1, 2009, the JPML created these consolidated proceedings for cases "relating to at
least one of the drospirenone-containing oral contraceptives Yaz and Yasmin,
which are manufactured by Bayer."  (MDL 2100, Doc. 1).  Pursuant to the JPML
order, this multidistrict litigation was "assigned to the Honorable David R.
Herndon for coordinated or consolidated pretrial proceedings." *Id.*  Shortly
thereafter, the undersigned judge directed the clerk's office to assign Yaz and
Yasmin related litigation originating in this district to these consolidated
proceedings.  Moreover, the undersigned judge directed the clerk's office to create
a protocol with unique docketing numbers so Yaz and Yasmin related cases could
be easily identified and separated from the rest of the Court's docket.   Thus,
according to the undersigned judge's directive, as the Chief Judge for the
Southern District of Illinois and pursuant to local practice, Yaz and Yasmin
related cases that originate in the Southern District of Illinois or are removed to
the Southern District of Illinois are automatically assigned to the undersigned
judge included in the  *In re Yasmin and Yaz (Drospirenone) Marketing, Sales
Practices and Products Liability Litigation* (S.D. Ill., MDL No. 2100).
.

entitled to relief." Fed. R. Civ. P. 8(a)(2).  However, to survive a Rule 12(b)(6)

motion, a complaint must allege "enough facts to state a claim to relief that is

plausible on its face" *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

In other words, the plaintiff has an obligation "to provide the 'grounds' of his

'entitle[ment] to relief' " by providing "more than labels and conclusions," because

"a formulaic recitation of the elements of a cause of action will not do . . . ."  *Id.* at

555-56 (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).  Nor does a

complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'  *Ashcroft v. Iqbal*, --- U.S.---, --- 129 S. Ct. 1937, 1949 (2009)

(quoting *Twombly*, 550 U.S. at 557).

**B.    Claims**

Plaintiff brings five counts against Niemann Foods:  (1) strict

products liability; (2) negligence; (3) failure to warn; (4) breach of implied

warranty, and (5) fraudulent misrepresentation under the Illinois Consumer

Fraud Act (09-cv-10217 Doc. 2-1).  As these are state law claims, Illinois

substantive law applies.  *See Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

The Court addresses each Count below.

**1.    Counts I – III;  Strict Product Liability, Negligence, and
        Failure to Warn**

The viability of Counts I through III depends on whether Illinois

imposes an affirmative duty on pharmacists to warn customers about a drug's

risks and side effects.[4]   Accordingly, the Court reviews a pharmacist's duty to warn below.

As a preliminary matter, this Court notes that the issue before it is a narrow one.  Plaintiff is not alleging that Niemann Foods incorrectly filled her prescription or that Niemann Foods negligently performed a voluntary undertaking.  (*See* 3:09-cv-10217, Doc. 2-1).  Nor is Plaintiff alleging that Niemann Foods had patient-specific knowledge about her drug allergies and therefore knew the prescribed drug was contraindicated for her.  *See Id.*  In each of these scenarios, Plaintiff would have a valid claim against Niemann Foods under Illinois law.  *See* Jones v. Walgreen *Co.*, 265 Ill. App. 308 (Ill. App. 1932) (when doubt exists as to what drug has been prescribed, pharmacist has a duty to take reasonable precautions to ensure prescription is accurately filled); *Frye v. Medicare-Glaser Corp.*, 605 N.E.2d 557 (where pharmacy voluntarily provides warning about prescription drug to customer, the extent of pharmacy's duty is to perform the voluntary undertaking without negligence); *Happel v. Wal-Mart Stores, Inc.*, 766 N.E.2d 1118, 1129 (Ill. 2002) (pharmacy has "narrow duty to warn" when it has "patient-specific information about drug allergies, and knows that the drug being prescribed is contraindicated for the individual patient").

---

[4] As previously noted, the Complaint does not identify which claims are alleged against individual Defendants.  Rather, all counts in the Complaint are directed toward "Defendants."  Accordingly, it is impossible to ascertain whether Plaintiff is attempting to assert strict liability and negligence claims based on theories of defective design or manufacture.  To the extent Plaintiff's complaint attempts to allege such claims against Niemann Foods, a non-manufacturing pharmacy, her claims must fail.  *See Kirk v. Michael Reese Hosp.*, 513 N.E.2d 387, 391-394 (Ill. 1987); *Leesley v. West*, 518 N.E.2d 758 (Ill. App. 1988).

Rather, Plaintiff's failure to warn claims assert that the "Defendants" are liable, in both strict liability and negligence, for failing to provide the medical community and the public with adequate warnings regarding the potential risks of taking Yasmin. (3:09-cv-10217 Doc. 2-1, pp. 12-20). Accordingly, the limited question before the Court is whether, under Illinois law, a pharmacist, that correctly fills a prescription and does not have any patient-specific knowledge, has an affirmative duty to warn a customer about a prescription drug's potential side effects.

Research indicates that Illinois courts have consistently held a pharmacist does not have an affirmative duty to provide customers with a warning regarding a drug's potential risks or side effects. *See Happel,* 766 N.E.2d at 1129 (absent an allegation of "specialized knowledge," pharmacies have no affirmative duty to warn patients of potential adverse reactions to prescription drugs); *Leesley v. West*, 518 N.E.2d 758 (Ill. App. Ct. 1988) (pharmacists have no duty to provide patients with a written copy of a prescription drug's known risks and side effects); *Jones v. Irvin*, 602 F. Supp. 399, 401 (S.D. Ill. 1985) ("the overwhelming majority of recent state cases stand for the proposition that the pharmacist has no duty to warn").

In addition, Illinois Courts have held that (1) pharmacists have no duty to warn that a drug is being prescribed in an excessive amount *Fakhouri v. Taylor*, 618 N.E.2d 518, 520-521(Ill. App. 1993)*; Eldridge v. Eli Lilly & Co.*, 485 N.E.2d 551 (Ill. App. Ct. 1985), and (2) a pharmacy that voluntarily includes a warning about one or more of a drug's risks does not undertake a duty to warn about all possible risks. *See Frye v. MedicareGlaser Corp.*, 605 N.E.2d 557,

560-561 (Ill. 1992); *Kasin v. Osco Drug, Inc.*, 728 N.E.2d 77, 79-81 (Ill. App. Ct. 2000).

One of the stated reasons for declining to impose a duty to warn on pharmacists is that imposing such a duty would run contrary to the public policy against "expanding the liability risks of health professionals." *Leesley*, 518 N.E.2d at 763. Additional reasons cited by Illinois courts include: (1) Interference with the doctor-patient relationship *see Fakhouri*, 618 N.E.2d at 521("[t]o impose a duty to warn on the pharmacist would be to place the pharmacist in the middle of the doctor-patient relationship, *without* the physician's knowledge of the patient") (emphasis in original); *Eldridge*, 485 N.E.2d at 553 (because "[t]he propriety of a prescription depends not only on the propensities of the drug but also on the patient's condition" to fulfill such a duty the "pharmacist would have to interject himself into the doctor-patient relationship and practice medicine without a license"); *Jones v. Irvin*, 602 F.Supp. 399, 403 (S.D. Ill. 1985) ("[p]lacing these duties to warn on the pharmacist would only serve to compel the pharmacist to second guess every prescription a doctor orders in an attempt to escape liability"); (2) the magnitude of the burden of imposing a duty to warn is too great *see Leesley*, 518 N.E.2d at 763 (if such a duty were imposed pharmacists would face the "oppressive burden of retaining and cataloguing every document received to be certain each is distributed with the appropriate drug"; (3) the injury that might result due to the absence of a particular warning is not reasonably foreseeable *see Leesley*, 518 N.E.2d at 763 "[t]he foreseeability of injury to an individual consumer in the

absence of any particular warning also varies greatly depending on the medical history and condition of the individual-facts which we cannot reasonably expect the pharmacist to know"); and (4) imposing a duty to warn would be inconsistent with the learned intermediary doctrine. [5]   *See Id.* at 762-763 (declining to impose a duty to warn on the defendant pharmacy, in part, because it would be "illogical and inequitable" to impose a duty on a pharmacist that is not imposed on the drug's manufacturer).

        Considering these opinions, it is clear that in Illinois, a pharmacist does not have an affirmative duty to warn customers about a prescription drug's dangerous propensities or side effects.  The bases for declining to impose such a duty are particularly germane in this case because Plaintiff is alleging that the Bayer Defendants concealed information from the public and medical community regarding the dangerous propensities of Yasmin.  Certainly, if Illinois pharmacists do not have a duty to warn customers directly about *known* risks or side effects (absent patient-specific knowledge related to a contraindication), they do not have a duty to warn about risks and side effects that have been concealed by the pharmaceutical manufacturer and are therefore *unknown.*

---

[5] The learned intermediary doctrine provides that pharmaceutical manufacturers do not have a duty to directly warn patients about a prescription drug's dangerous propensities.  Rather, pharmaceutical manufacturers have a duty to inform physicians of the dangers of prescription drugs, and that physicians have a duty to warn patients of those dangers.  *See Kirk v. Michael Reese Hospital and Medical Center*, 513 N.E.2d 387, 392 (Ill. 1987) (considering a drug manufacturer's duty to warn and adopting the learned intermediary doctrine).

As an additional matter, the Court addresses the parties arguments with respect to the learned intermediary doctrine.  (3:09-cv-10217 Doc. 23 p. 6; MDL 2100 Doc. 482 p. 6; 09-cv-10217 Doc. 9 p. 8; MDL 2100 Doc. 349 p. 8).  As noted above, the learned intermediary doctrine provides that pharmaceutical manufacturers do not have a duty to directly warn patients about a prescription drug's dangerous propensities.  Rather, pharmaceutical manufacturers have a duty to inform physicians of the dangers of prescription drugs, and that physicians have a duty to warn patients of those dangers.  *See Kirk v. Michael Reese Hospital and Medical Center*, 513 N.E.2d 387, 392 (Ill. 1987) (considering a drug manufacturer's duty to warn and adopting the learned intermediary doctrine).

Niemann Foods contends that a pharmacy has no duty to directly warn a consumer because Illinois employs the learned intermediary doctrine.  (09-cv-10217 Doc. 9 p. 8; MDL 2100 Doc. 349 p. 8).  Plaintiff contends that the learned intermediary doctrine is not grounds for dismissal because she is alleging that the Bayer Defendants and Niemann Foods did not provide adequate warnings to Plaintiff's prescribing physician.  (3:09-cv-10217 Doc. 23 pp. 6-7; MDL 2100 Doc. 482 pp. 6-7).  This argument, however, is applicable only to the Bayer Defendants – the alleged manufacturers.  Niemann Foods is a non-manufacturing pharmacy defendant.

To the extent Plaintiff is alleging that a pharmacy is only protected from liability where the manufacturing defendant has provided the prescribing physicians with adequate warnings, The Court finds no support for Plaintiff's

contention.  As discussed above, the learned intermediary doctrine is one of
several factors considered by Illinois courts that have declined to impose a duty to
warn on pharmacists.  Specifically, Illinois courts have held that it would be
inequitable to impose a duty on pharmacists that is not imposed on
pharmaceutical manufacturers.  *See e.g. Leesley*, 518 N.E.2d 762-763.  The fact
that the learned intermediary doctrine has been an influential factor in cases
involving a pharmacist's duty to warn does not indicate that a pharmacist is
protected from liability if and only if the pharmaceutical manufacturer provides
the prescribing physician with an adequate warning.

In the instant case, Plaintiff cannot maintain her failure to warn
claims against Niemann Foods because Niemann Foods did not have patient-
specific information about a contraindication and because, absent such
specialized knowledge, Niemann Foods did not have a duty to warn its customers
about the risks and side effects of Yasmin.  The success or failure of the Bayer
Defendants in raising the learned intermediary defense is irrelevant.

The Court addresses one final matter with respect Plaintiff's strict
liability claim against Niemann Foods.  Niemann Foods asserts that it is entitled
to dismissal of Plaintiff's strict liability claim because it has complied with the
requirements of section 2-621 of the Illinois Code of Civil Procedure.  (09-cv-
10217 Doc. 9 pp. 3-6; MDL 2100 Doc. 349 pp. 3-6).[6]  Section 2-621 provides that
a nonmanufacturer defendant in a strict product liability action may be dismissed

---

[6] Although § 2-621 can be viewed as procedural, the courts, in fact, view it as
substantive for the purposes of *Erie*.  *See e.g., LaRoe v. Cassens & Sons, Inc.*,
472 F. Supp. 2d 1041, 1047 (S.D. Ill. 2006).

from the cause of action if it certifies the correct identity of the manufacturer of the product which allegedly caused the plaintiff's injury. *See Murphy v. Mancari's Chrysler Plymouth, Inc.,* 887 N.E.2d 569, 573 (Ill. App. Ct. 2008). When the non-manufacturer defendant certifies the identity of the manufacturer, the plaintiff has sued the product manufacturer, and the manufacturer has answered or otherwise pled, the court must dismiss the strict liability claim against the certifying defendant. *Id.* at 573. A plaintiff may at any time move to reinstate the product liability claim against the dismissed nonmanufacturer defendant "if the action against the product manufacturer would be impossible or unavailing." *Id.*

In the instant case, Niemann Foods has certified (1) that it "had no part in the design or manufacture of Yasmin of YAZ, did not provide any instruction or warning to the manufacturer regarding the alleged defect, had no knowledge of the defect alleged by Plaintiffs, and did not create the defect alleged by Plaintiff"; and (2) that "one or more of the Bayer and/or Berlex Defendants, as alleged by Plaintiff in her Complaint, are the manufacturers of Yasmin and YAZ." (09-cv-10217 Doc. 9 Exhibit B; MDL 2100 Doc. 349 Exhibit B). Plaintiff contends that this certification is insufficient because Niemann Foods has not identified the specific Bayer entity that manufactured Yasmin and YAZ. (3:09-cv-10217 Doc. 23 p. 2; MDL 2100 Doc. 482 p. 2). The Court notes, however, that Bayer Schering Pharma AG has admitted that "it manufactures drospirenone and ethinyl estradiol, the progestin and estrogen contained in YAZ, Yasmin and Ocella." (3:09-10217 Doc. 30 p. 5; MDL 2100 Doc. 669, p. 5). Accordingly, Plaintiff

knows the identity of the manufacturing defendant and her argument is therefore moot.  The Court finds that, in addition to the reasons already discussed, section 2-621 prevents Plaintiff from stating a claim against Niemann Foods.[7]

## 2.    Count IV Implied Breach of Warranty

Plaintiff asserts a claim for breach of implied warranty against Niemann Foods based on its role as the pharmacy that dispensed Yasmin to the Plaintiff.  (09-cv-10217 Doc. 2-1, pp. 20-23).  It is not entirely clear whether Plaintiff is alleging a breach of implied warranty claim under the Illinois Uniform Commercial Code ("Illinois UCC") or is attempting to allege a common law breach of implied warranty claim.  However, in Illinois, other than two narrowly defined exceptions which do not apply here, courts have only recognized implied warranties involving "transactions in goods" as defined by the Illinois Commercial Code ("Illinois UCC").  *Dunlap v. First National Bank of Danville*, 76 F. Supp. 2d 948, 961 (C.D. Ill. 1999) *citing American Labelmark Co. v. Akiyama Corp. of America*, 1993 WL 460838, *2 (applying Illinois law).  *See also Mekertichian v.*

---

[7] The Court notes that a literal reading of the statute requires that a nonmanufacturing defendant must remain a party-defendant until such time as the manufacturer  has been named, served with process and required to answer or otherwise plead.  However, Illinois Courts have found that a "premature" dismissal is "of little consequence" where the manufacturer is known to the plaintiff.  *Cherry v. Siemans Medical Systems, Inc.* 206 Ill. App. 3d 1055, 1060 (Ill. App. 1990) (nonmanufacturing products liability defendant was properly dismissed after identifying manufacturer; though dismissal prior to time plaintiff served process on manufacturer was premature, plaintiff had been aware of manufacturer's identity all along and had refrained from serving manufacturer merely because she did not wish to undergo difficulty or incur expense of serving foreign defendant).  *See also Id.* (section 2-621 "places upon a plaintiff an affirmative duty to file suit and obtain jurisdiction over a manufacturing defendant once the identity is known").

*Mercedes-Benz U.S.A., L.L.C.* 347 Ill.App.3d 828, 832 (Ill. App. 2004); 810 ILCS 5/2-102. *See e.g., Naiditch v. Shaf Home Builders, Inc.*, 160 Ill. App. 3d 245, 264 (Ill. App. 1987); *Harmon v. Dawson*, 175 Ill. App. 3d 846, 849, 530 (Ill. App. 1988). *See also Fink v. DeClassis* 745 F. Supp. 509, 515-516 (N.D. Ill. 1990). The Court, therefore, analyzes Plaintiff's breach of implied warranty claim under the Illinois UCC.

In the instant case, to maintain a cause of action for breach of implied warranty, Plaintiff must first establish that the subject transaction is considered a "transaction in goods" under the Illinois UCC. The Illinois UCC defines goods as "all things, including specially manufactured goods, which are movable at the time of identification to the contract for sale." 810 ILCS 5/2-105(1). Prescription medication, such as Yasmin, would constitute a good under this definition. The practice of pharmacy, however, involves more than the provision of pharmaceuticals; it also involves the provision of professional healthcare services. *See e.g.,* 225 ILCS 85/3(d)(1) ("practice of pharmacy" includes "the interpretation and the provision of assistance in the monitoring, evaluation, and implementation of prescription drug orders"); 225 ILCS 85/3(d)(4) ("practice of pharmacy" includes "patient education on the proper use or delivery of medications"); 225 ILCS 85/3(d)(7) ("practice of pharmacy" includes the "provision of patient counseling"); 225 ILCS 85/3(r)(3) ("patient counseling" includes "facilitation of the patient's understanding of the intended use of the medication"); 225 ILCS 85/3(d)(9) ("practice of pharmacy" includes "the provision of those acts or services necessary to provide pharmacist care"); 225 ILCS

85/3(d)(10) ("practice of pharmacy" includes "medication therapy management");

ILCS 85/3(d); 225 ILCS 85/1 (the practice of pharmacy in Illinois is "a

professional practice affecting the public health, safety and welfare").  *See also*

*Walgreen Co. v. Selcke*, 230 Ill. App. 3d 442, 451 (Ill. App. 1992) (acknowledging

that the practice of pharmacy involves more than pulling packages from a shelf

and ringing up a sale; the practice of pharmacy involves "the exercise of

pharmaceutical interpretation, skill or knowledge of medicine or drugs.  The

pharmacist chooses and describes the desired ingredient, as prescribed by the

physician, and [makes determinations] from his or her own knowledge, training

and experience").

        Accordingly, a transaction such as the one at issue in this case, is a

mixed transaction involving both the provision of goods and the provision of

services.  In Illinois, where a transaction involves both the provision of goods and

services, courts apply the "predominant purpose test" to determine whether there

has been a transaction in goods.  Pursuant to the predominant purpose test,

"there is a 'transaction in goods' only if the contract is predominantly for goods

and incidentally for services."  *Brandt v. Boston Scientific Corp*., 204 Ill.2d 640,

275 Ill.Dec. 65, 792 N.E.2d 296 (Ill.2003) citing *Belleville Toyota, Inc. v. Toyota*

*Motor Sales*, *U.S.A., Inc.*, 199 Ill.2d 325, 352-353, 264 Ill. Dec. 283, 770 N.E.2d

177 (2002).

        The Illinois Supreme Court applied the predominant purpose test to

an analogous transaction in *Brandt v. Boston Scientific Corp*., 204 Ill.2d 640,

275 Ill.Dec. 65, 792 N.E.2d 296 (Ill.2003).[8]  The transaction at issue in *Brandt*,

involved the sale of a medical device, by a health center, in conjunction with the

provision of other healthcare services.   The court concluded that although the

transaction included the sale of a medical device, the "predominate nature of the

transaction as a whole" was the provision of medical treatment for the plaintiff's

infection and thus, the transaction was primarily one for services.  *Id.* at 652-653.

In so holding, the court noted that the plaintiff did not come to the health center

"merely to buy a [medical device] as one buys goods from a store."  Rather, the

plaintiff came to the health care center to receive treatment for her condition and

the treatment she received involved a number of services in addition to the

provision of the medical device.

The transaction at issue in the instant case is analogous to the

transaction at issue in *Brandt.*  In the instant case, the sale of Yasmin was just

one aspect of the transaction between Niemann Foods and the Plaintiff.

Prescription drugs are not available to the general public.  They can only be

legally distributed pursuant to a valid prescription from a licensed physician.  *See*

21 U.S.C. § 353(b); 410 ILCS 620/2.37; 410 ILCS 620/3.21.  A pharmacist acts as

the gate-keeper of prescription medication, monitoring the distribution and

---

[8] Before applying the predominant purpose test, the court examined and declined to follow *Cunningham v. MacNeal Memorial Hospital*, 47 Ill.2d 443, 266 N.E.2d 897 (1970).  The Court explained that *Cunningham* was not applicable because, among other things, the decision was issued prior to the adoption of the predominant purpose test.  The Court also noted that the *Cunningham*  rationale was applied in *Berry v. G.D. Searle & Co.*, 56 Ill.2d 548, 554-55, 309 N.E.2d 550 (1974).  Accordingly, *Cunningham* and *Berry* are not applicable to the breach of warranty analysis in this case.

implementation of prescription drug orders.  Thus, a pharmacist provides a service to the patient, the physician, and the community.   Moreover, the pharmacist provides a number of professional healthcare services, including utilizing professional skill and care to interpret and evaluate the prescription; educating patients as to the intended use of the medication and manner of ingestion; and maintaining necessary records for compounding, labeling, and storing pharmaceuticals.

Considering the entirety of the transaction, as the Illinois Supreme Court did in *Brandt*, it is evident that the sale of pharmaceuticals is just one aspect of the transaction between patient and pharmacist. The predominant purpose of such transactions is the provision of professional healthcare services which are a necessary step in completing the treatment regimen selected by the patient's physician.  Therefore, the subject transaction was not a "transaction in goods" and Plaintiff cannot state a claim for breach of warranty against Niemann Foods.

In addition, as the Court has already discussed, in Illinois, pharmacies and pharmacists are immune from failure to warn claims.  Allowing plaintiffs to pursue a breach of warranty claim against pharmacists would nullify this protection and would be inconsistent with the policy against "expanding the liability risks of health professionals." *Id.* at 763.  *See also Id.* at 763.

Further, although the Court need not address the issue here, the Court questions whether Plaintiff could establish the requisite elements of a breach of implied warranty claim (either merchantability or for a particular

purpose) under the Illinois UCC in a state that does not recognize a duty to warn on the part of the pharmacist and that has adopted the learned intermediary doctrine with respect to manufacturing defendants. *See e.g. Presto v. Sandoz Pharms. Corp.,* 487 S.E.2d 70,75 (Ga.App.Ct.1997) (pharmacist was "entitled to summary judgment on the [UCC] warranty claim because it neither manufactured nor prescribed the subject drug"); *Makripodis v. Merrell-Dow Pharmaceuticals,* 361 Pa.Super. 589, 523 A.2d 374, 376 (1987) (druggist does not warrant that prescription drugs are fit for "ordinary uses," as use of drug is a decision made by the physician); *Bichler v. Willing,* 58 A.D.2d 331, 397 N.Y.S.2d 57, 58-59 (1977) (warranties are not implied, as patient places confidence in doctor's skill, not pharmacist's); *McLeod v. W.S. Merrell Co.,* 174 So.2d 736, 738-39 (Fla.1965).

**3.    Count V Illinois Consumer Fraud Act**

To state a cause of action under the Illinois Consumer Fraud Act, five elements must be proven: (1) a deceptive act or unfair practice occurred, (2) the defendant intended for plaintiff to rely on the deception, (3) the deception occurred in the course of conduct involving trade or commerce, (4) the plaintiff sustained actual damages, and (5) such damages were proximately caused by the defendant's deception. *Dubey v. Public Storage, Inc.* 918 N.E.2d 265, 277, 335 Ill.Dec. 181, 193 (Ill.App. 2009). Moreover, claims that are based on "a course of fraudulent conduct," are subject to the heightened pleading standard of Rule 9(b). *Borsellino v. Goldman Sachs Group, Inc.,* 477 F.3d 502, 507 (7th Cir. 2007). Rule 9(b) requires the plaintiff to "state with particularity the circumstances

constituting fraud or mistake."  Fed. R. Civ. P. 9(b).  The circumstances of fraud

or mistake include the "identity of the person who made the misrepresentation,

the time, place and content of the misrepresentation, and the method by which

the misrepresentation was communicated to the plaintiff."  *Gen Elec. Capital*

*Corp. v. Lease Resolution Corp.,* 128 F.3d 1074, 1078 (7th Cir. 1997).

In the instant case, the Complaint states that Niemann Foods was "in

the business of selling, distributing, labeling, marketing, and/or placing, either

directly or indirectly through third parties or related entities, pharmaceutical

drugs including Yasmin and YAZ into the interstate commerce, including in the

State of Illinois, and derived substantial revenue from these activities."  (09-cv-

10217 Doc. 2-1 p. 20).  Other than that, the boilerplate Complaint only asserts

generic allegations against "Defendants."  In fact, even the allegations dealing with

the development, production, labeling, and marketing of Yasmin, which clearly do

not implicate Niemann Foods, are directed toward "Defendants."

The consumer fraud count is no exception.  In her consumer fraud

count Plaintiff asserts generally that "*Defendants* fraudulently misrepresented

and published information in various forms of media. . . regarding their product's

character, safety, quality and/or effectiveness, including, but not limited to, the

public ad campaigns which were the subject of the FDA's 2003, 2008, and 2009

warnings."  (09-cv-10217 Doc. 2-1 p. 85).  There are no specific allegations

concerning what representations were made, to whom, in what manner such

representations were made, or when such representations were made.  Plaintiff's

ICFA count cannot succeed against Niemann foods in light of Plaintiff's failure to

meet her obligation of identifying with particularity the fraudulent conduct in which Niemann foods allegedly engaged.

The Court also notes that the thrust of the Complaint is that the Bayer Defendants failed to inform the public and the medical community about Yasmin's dangerous propensities.  Assuming that the Bayer Defendants engaged in the alleged deceptive conduct, Niemann Foods would have no knowledge regarding the alleged dangerous propensities of Yasmin.  Accordingly, the facts asserted by the Plaintiff could not possibly create liability as to Niemann Foods under ICFA.  *See Faucett v. Ingersoll-Rand Min. & Machinery Co.* 960 F.2d 653 (negligence claim against non-diverse defendant had no reasonable chance of success where undisputed facts demonstrated non-diverse defendant could not be liable).

For the reasons stated herein, the Court finds that, as to Niemann Foods, the allegations in the complaint fall far short of alleging a claim under the Illinois Consumer Fraud Act.

## CONCLUSION

For the foregoing reasons, the Court **GRANTS** Niemann Foods

Motion to Dismiss.  (09-cv-10217 Doc. 9; MDL 2100 Doc. 349).

**IT IS SO ORDERED**

This 26th day of February, 2010.

/s/  David R Herndon

Chief Judge
United States District Court